DECISION.
{¶ 1} Defendant-appellant Gerald Chandler appeals his conviction for menacing by stalking. We affirm the trial court's judgment.
 {¶ 2} Beginning in January 2002, Chandler's attempts to contact his ex-girlfriend, Latifah Sanders, led her to seek a temporary protection order ("TPO"). But Chandler was undeterred. His continued attempts to contact Sanders over the next several months were repeatedly rebuffed and became more confrontational.
 {¶ 3} Early one morning, Chandler was sitting outside of Sanders's home when she left for work. When she returned home later that morning, Sanders heard knocking on her back door. When she looked through the peephole, she saw that it was Chandler and called the police. Officer Charles Hains arrived a few minutes later. Sanders told Officer Hains about the situation, and he went out to his car to get a form. While he was outside, Sanders opened her window and yelled that Chandler was at the back door again. Officer Hains went to the other side of the building and saw Chandler leaving. He stopped Chandler and asked his name. Chandler answered, "Jeff Smith." Because Chandler matched the physical description given by Sanders, Officer Hains asked Chandler for some identification. When Chandler claimed he did not have any identification, Officer Hains detained Chandler until Sanders identified him.
 {¶ 4} Chandler was arrested and indicted on two counts of menacing by stalking, felonies of the fourth degree. Sanders, Officer Hains, and Chandler's mother testified at trial. The jury found Chandler guilty of both counts. The trial court merged the two counts and sentenced Chandler to fifteen months' imprisonment.
 {¶ 5} Chandler now raises five assignments of error. In the first three, he challenges the trial court's denial of his motions for acquittal on the sufficiency and the weight of the evidence. In his fourth assignment, Chandler argues that the trial court improperly sentenced him when it failed to advise him of his post-release control conditions. In his fifth assignment, Chandler argues that he was denied the effective assistance of trial counsel. We overrule all but Chandler's fourth assignment, which is moot. We therefore affirm the trial court's judgment.
 I. Sufficiency and Weight of the Evidence {¶ 6} Chandler argues that the trial court improperly denied his motion for acquittal because the jury's verdict of guilty was based upon insufficient evidence and was against the weight of the evidence.
 {¶ 7} In reviewing a record for sufficiency, we must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution.[1]
 {¶ 8} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[2] The court must weigh the evidence, consider the credibility of witnesses, and determine whether the trier of fact lost its way in finding the defendant guilty. A new trial should be granted on the weight of the evidence only in exceptional cases.[3] And "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."[4]
 {¶ 9} The jury found Chandler guilty of both counts of menacing by stalking under R.C. 2903.211(A), which provides, "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."[5] A "pattern of conduct" means two or more actions or incidents closely related in time.[6]
 {¶ 10} Both counts against Chandler contained specifications that elevated the crimes from first-degree misdemeanors to fourth-degree felonies. Count one alleged that Chandler had trespassed on the land or premises where Sanders lived, was employed, or attended school between February and May.[7] Count two alleged that Chandler had committed the crime on May 8 while he was the subject of a protection order.[8] There was no requirement that the pattern of conduct be proved by events from two different days.[9]
 II. The Evidence At Hand {¶ 11} Sanders testified to the following: Regarding a court appearance on a trespassing charge, Chandler told Sanders, "B [sic], you come to court I'll get somebody to kick your A [sic]." In March, Chandler went to where Sanders worked and tried to get her to go home with him, grabbing her arm and scaring her in the process. In early April, Chandler was waiting for her at the bus stop where she regularly boarded her bus to work. He grabbed her, and she felt that she was in danger. Chandler threatened her two days before they were scheduled to go to court for the TPO hearing. Early in the morning of May 8, Chandler was sitting in front of her apartment building when she left for work. And later that same morning, Chandler came to her apartment and banged on the back door. Between February and May, Chandler called Sanders a number of times, and those calls made her feel "not safe to go outside."
 {¶ 12} Chandler presented no evidence to rebut the prosecution's testimony. But Chandler's mother did testify that, contrary to Sanders's testimony, Sanders had repeatedly contacted Chandler by phone and even invited him to come to see her. Chandler's mother also testified that the police had come to her house several times to serve the TPO, but that Chandler was never present. And Officer Hains testified that he had no way of determining whether the TPO was ever served on Chandler.
 {¶ 13} A defense exhibit depicting Chandler's mother's phone is missing from the record. Because this piece of evidence goes only to Sanders's credibility, and not to the merits of the case, its absence has no bearing on his sufficiency claim. And because the record sufficiently describes the contents of the exhibit, the absence of the actual picture is inconsequential to our review of the weight of the evidence.
 {¶ 14} The jury saw no reason to discount Sanders's testimony based on the photographic exhibit and the witnesses' testimony. And we see no reason to either.
 {¶ 15} Menacing by stalking is elevated to a fourth-degree felony where "the offender was the subject of a protection order" issued under R.C. 2903.213 or 2903.214.[10] The TPO here was issued under R.C.2903.214.
 {¶ 16} The state argues that there was no knowledge requirement for a felony conviction under the menacing statute. But to convict someone of a felony based on the mere existence of a court order the person had no knowledge of would surely violate due process. This would be analogous to holding a person in contempt for violating a court order that he did not know about. To establish contempt, a party must prove not only that a party violated an existing order but also that the party had knowledge of the order.[11]
 {¶ 17} The TPO indicated that it was served on both Sanders and Chandler on April 24. Chandler presented no evidence to rebut this. He merely denied that he had any knowledge of the TPO. But Sanders testified that she saw Chandler coming out of the courtroom on the day the TPO was issued. Further, Sanders testified that she told Chandler that she had a TPO against him when he called her on April 30. And Chandler's mother testified that sheriffs had been to her home several times. Thus, even if the TPO was not served on Chandler on April 24, there was sufficient evidence from which the jury could have concluded that Chandler knew that a TPO was in effect by May 8.
 {¶ 18} Because the evidence indicated that Chandler had knowledge of the TPO, and because the jury was instructed that it could consider whether Chandler had knowledge of the TPO, we need not consider this issue further. Chandler did not object to the instruction, so he waived all but plain error.[12] While the instruction concerning Chandler's knowledge of the TPO could have been clearer, it did not amount to plain error.
 {¶ 19} Viewing the evidence in the light most favorable to the state, we are thus left with Chandler's pattern of conduct that caused Sanders to fear for her safety. Chandler threatened Sanders that he would physically harm her and acted in ways that suggested he might follow through on that threat. Further, Chandler went to Sanders's workplace at least one time and to her home at least one time. And Chandler was the subject of a TPO at the time of the offense on May 8. Reasonable minds could certainly have concluded from this evidence that Chandler was guilty of both counts. And despite Chandler's arguments, we cannot say that the jury lost its way in weighing the evidence.
 {¶ 20} Because the jury verdict was not based upon insufficient evidence or against the weight of the evidence, the trial court properly denied Chandler's motion for acquittal.
 {¶ 21} We therefore overrule Chandler's first, second, and third assignments of error.
 III. Sentencing {¶ 22} Chandler's fourth assignment of error asserts that the trial court failed to properly advise him of any possible post-release control. At oral argument, both sides stipulated to withdraw this assignment because Chandler had served his sentence and had not been placed on post-release control. Because it is moot as a practical matter, we need not rule on this assignment.
 IV. Ineffective Assistance of Counsel {¶ 23} Chandler's fifth assignment of error asserts that he did not receive effective assistance of counsel because his counsel did not request jury instructions on a lesser-included offense. His argument is without merit.
 {¶ 24} To establish ineffective assistance, the defendant must prove that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) the substandard performance prejudiced the defendant.[13]
 {¶ 25} The record reflects that Chandler's trial counsel stated that he had discussed the matter with his client and that they had decided not to ask for an instruction on the misdemeanor form of the offense with regard to the TPO. Since there was sufficient evidence for a jury to determine that Chandler had knowledge of the existence of the TPO, it was proper for trial counsel not to request the instruction.
 {¶ 26} We therefore overrule Chandler's fifth assignment of error.
 {¶ 27} Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
Winkler, P.J., and Gorman, J., concur.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[2] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[3] Id., citing State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[4] Section 3(B)(3), Article IV, Ohio Constitution.
[5] R.C. 2903.211(A)(1).
[6] R.C. 2903.211(D)(1).
[7] R.C. 2903.211(B)(2)(c).
[8] R.C. 2903.211(B)(2)(g).
[9] State v. Scruggs (2000), 136 Ohio App.3d 631, 737 N.E.2d 574.
[10] R.C. 2903.211(B)(2)(g).
[11] Arthur Young Co. v. Kelly (1990), 68 Ohio App.3d 287,588 N.E.2d 233.
[12] Crim.R. 30(A); State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332.
[13] Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.