[Cite as *State v. Thomas*, 2014-Ohio-2803.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-130620 |
| | | C-130621 |
| Plaintiff-Appellee, | : | C-130622 |
| | | C-130623 |
| vs. | : | C-130624 |
| | | TRIAL NOS. 13CRB-15557 A,B |
| JAMES THOMAS, | : | 13CRB-15808 A,B,C |
| Defendant-Appellant. | : | *O P I N I O N.* |

Criminal Appeals From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  June 27, 2014

*Charles A. Rubenstein*, City Prosecutor, and *Jennifer Bishop*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Amy R. Williams*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}     After his ex-girlfriend told him not to contact her, James Thomas flooded her inbox with multiple emails per day, and also left a series of "gifts" at her home in the middle of the night.  His advances were unwelcome.  The Hamilton County Municipal Court convicted Mr. Thomas of three counts of menacing by stalking and two counts of telecommunications harassment.   On appeal, Mr. Thomas challenges the weight and sufficiency of the evidence below, and argues that his convictions constituted allied offenses and should have merged at sentencing.  He further contends that he was denied the effective assistance of counsel, that the trial court erred by admitting evidence not disclosed during discovery, and that he was denied a fair trial based on the cumulative effect of those errors.  We find his arguments to lack merit, so we affirm the trial court's judgment.

### Unwanted Overtures

{¶2}     Mr. Thomas had been dating Nickole Davis for about a year when their relationship came to an end in the spring of 2012.  In February 2013, she verbally told him not to contact her anymore, and on March 2, she responded to an email from him with the following message:  "I won't say this again ... Stop contacting me."  Despite her directives, Mr. Thomas continued his efforts at reconciliation by showering her with emails and leaving various "presents" outside of her home at night.

{¶3}     The following are just a few of the items Mr. Thomas left at Ms. Davis's home throughout the month of May:  a hand-carved mask, a stethoscope, an expandable file folder, and an empty wine bottle.  On some occasions, Mr. Thomas would email her afterward to ask if she had received his gifts.  By the end of May, the frequency of his emails had increased such that she received several messages from him each day.  Ms.

Davis explained that his presence at her home was particularly frightening because she had never told him where she lived. She testified:

> Every night I had to doublecheck [sic] my doors, doublecheck [sic] the windows. I don't know how many times I would look out there and see what's going on in the driveway or the car. Every morning I woke up, I know I came downstairs it would be something new, * * * and it affected me all kinds of emotionally. * * * [I]t affected my ability at work because I didn't know if he was going to show up while I wasn't there.

{¶4} On June 14, his contact escalated to the point that she involved the police. On that day, she discovered a Styrofoam cooler sitting on her car, wrapped in aluminum foil. Because the package looked suspicious, Officer Steven Rogers summoned the bomb squad to the scene. After ensuring that the package was safe, the police opened it to find a blood pressure cuff, a psychology folder, and a cupcake. Ms. Davis also received two emails from Mr. Thomas that day—one acknowledged that he had left a present outside, saying "It's there," and another contained a link to a pornographic video and asked if she wanted to "make this happen."

{¶5} On June 15, Mr. Thomas sent Ms. Davis six emails. The first warned, "I will NOT allow you to be so ugly towards me." The 0ther five messages contained links to news articles with such riveting headings as "700-Pound Snake Found In North Carolina" and "Illuminati Council of 13 Human Sacrifice in Denver Colorado!" The police responded to Ms. Davis's house a second time on June 16, after she reported having seen Mr. Thomas on her property. True to form, Mr. Thomas sent her two more messages that day, one of which alluded to him having left another gift for her.

{¶6} Mr. Thomas was charged with three counts of menacing by stalking under R.C. 2903.211 and two counts of telecommunications harassment under R.C.

3

2917.21(B). The first menacing-by-stalking and telecommunications-harassment complaints encompassed Mr. Thomas's behavior leading up to June 14. The second menacing and harassment charges alleged conduct occurring on or about June 15, and the third menacing complaint dealt with his actions on June 16. A bench trial was held, at which Mr. Thomas represented himself. The court convicted Mr. Thomas on all five counts. He now appeals.

### Convictions are Supported by the Evidence

{¶7} In his first assignment of error, Mr. Thomas challenges the weight and sufficiency of the evidence presented in support of his convictions. Mr. Thomas was convicted of three counts of menacing by stalking, as set forth in R.C. 2903.211(A)(1). That section provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶8} Mr. Thomas contends that the statute requires proof that the victim actually suffered physical harm or mental distress. But we have held that "where mental distress is alleged under R.C. 2903.211(A)(1), it is sufficient to demonstrate that an offender, by engaging in a pattern of conduct, knowingly caused the victim to believe that the offender would cause the victim mental distress." *Griga v. Dibenedetto*, 2012-Ohio-6097, 988 N.E.2d 590, ¶ 13 (1st Dist.). Ms. Davis testified that Mr. Thomas's presence at her home "terrified" her and his constant communications interfered with her ability to sleep and work. She persistently checked the locks on her windows and doors at home out of fear for her safety.

{¶9} Next, we must consider whether the state presented sufficient evidence to prove that the defendant engaged in a "pattern of conduct" with respect to each menacing-by-stalking conviction. R.C. 2903.211(D)(1) defines a "pattern of conduct" as

4

"two or more actions or incidents closely related in time." We have previously said that there is "no requirement that the pattern of conduct be proved by events from two different days." *State v. Chandler*, 1st Dist. Hamilton No. C-030008, 2004-Ohio-248, ¶ 10, citing *State v. Scruggs*, 136 Ohio App.3d 631, 634, 737 N.E.2d 574 (2d Dist.2000). Moreover, the statute does not define "closely related in time." "In failing to delimit the temporal period within which the two or more actions or incidents must occur, the statute leaves that matter to be determined by the trier of fact on a case-by-case basis." *Ellet v. Falk*, 6th Dist. Lucas No. L-09-1313, 2010-Ohio-6219, ¶ 22. Here, Mr. Thomas committed more than two acts during each time period at issue, thereby demonstrating a pattern of conduct for each charge.

{¶10} Finally, Mr. Thomas acknowledged at trial that he received the March 2 email in which Ms. Davis told him not to contact her anymore. Thus, the evidence indicated that Mr. Thomas acted knowingly, meaning that he was "aware that his conduct [would] probably cause a certain result[.]" *See* R.C. 2901.22(B). We conclude that the state adduced substantial, credible evidence with respect to each charge from which the trial court could find that the state proved beyond a reasonable doubt that Mr. Thomas knowingly engaged in a pattern of conduct giving Ms. Davis reason to believe he would cause her mental distress. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶11} The trial court also convicted Mr. Thomas of two counts of telecommunications harassment under R.C. 2917.21(B), which provides: "No person shall make or cause to be made a telecommunication * * * with purpose to abuse, threaten, or harass another person." The first conviction was supported by any one of the near-daily emails he sent in May and early June. Two of these emails indicate that he had been observing her activity. For example, one read: "That was me that called

5

you this Morning. I know you were/are still sleeping. Staying out late causes sleeping much the next day." And Mr. Thomas sent another six emails on June 15, any one of which could have formed the basis of the second harassment conviction. We believe the evidence was sufficient for the trial court to find that the state proved beyond a reasonable doubt that Mr. Thomas sent the messages with the purpose to harass Ms. Davis. *See id.*

{¶12} Nor can we say Mr. Thomas's convictions were against the weight of the evidence. It was for the trial court to assess Ms. Davis's credibility. Moreover, Mr. Thomas admitted that he sent the emails and left the gifts at her home. Our review of the entire record fails to persuade us that the trial court clearly lost its way and created such a manifest miscarriage of justice that we must reverse Mr. Thomas's convictions and order a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 (1997). We overrule the first assignment of error.

### The Offenses are Not Allied

{¶13} Because it is closely related to his first assignment, we next address Mr. Thomas's fourth assignment of error, in which he argues that his convictions were allied offenses of similar import and should have merged under R.C. 2941.25, Ohio's multiple-count statute. That provision provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, * * * the defendant may be convicted of only one." Mr. Thomas argues that because all of his offenses were part of the same general "pattern of conduct," they must be merged.

{¶14} "[I]f the evidence adduced at trial reveals that the state relied upon the same conduct to support the two offenses and that the offenses had been committed neither separately nor with a separate animus as to each, then the defendant is afforded the protection of R.C. 2941.25, and the trial court errs in

6

imposing separate sentences for the offenses." *State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2013-Ohio-3234, ¶ 31.

{¶15}    At trial, the state never said explicitly what evidence should be applied to what offense, but we do not believe it was required to do so.  The Ohio Supreme Court made clear that, when conducting a merger analysis, the trial court is not bound to the description of the defendant's conduct as presented by the state at trial.  *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661.  Instead, the court "must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus." *Id.* at syllabus.

{¶16}    Although there was some overlap of the facts alleged in the complaints charging the offenses, the evidence adduced at trial indicates that Mr. Thomas engaged in separate conduct toward Ms. Davis with regard to each of his five convictions.  Mr. Thomas's conduct occurred on multiple days and at multiple times throughout each day.  Thus, Mr. Thomas has not established his entitlement to protection under the merger statute, and we overrule his fourth assignment of error.

## Attorneys were Not Ineffective

{¶17}    In his second assignment of error, Mr. Thomas contends that two court-appointed attorneys were ineffective for failing to subpoena an alibi witness—former Cincinnati City Councilmember Cecil Thomas.  Mr. Thomas maintains that he could not have been at Ms. Davis's home on June 16 because he was celebrating Father's Day with Cecil Thomas, who he says is his uncle.  On two occasions, the court appointed an attorney to represent Mr. Thomas, and he twice requested that the attorney be permitted to withdraw so that he could represent himself.  After the second attorney

7

withdrew, the trial court referred the matter to the assignment commissioner to schedule a trial date.

{¶**18**}    To succeed on his ineffective-assistance claim, Mr. Thomas must demonstrate that counsel's performance was deficient, and that, absent those errors, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). We note that neither attorney could have subpoenaed the witness to testify at trial before the trial date had been set, so their representation was not deficient. Moreover, Mr. Thomas's subsequent waiver of his right to counsel has rendered him unable to show how he was prejudiced at trial by counsel's allegedly deficient conduct.

{¶**19**}    Mr. Thomas's real complaint is that the trial court erred by failing to rule on his pro se application to have Cecil Thomas subpoenaed as an alibi witness. When a court fails to rule on a pretrial motion, we may presume that the court overruled it. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223, 631 N.E.2d 150 (1994). Thus, we must determine whether the trial court erred by denying Mr. Thomas's request. Crim.R. 17(B) provides that a court shall subpoena an indigent defendant's witness "upon a satisfactory showing that the presence of the witness is necessary to an adequate defense[.]" The motion states that Cecil Thomas would testify to Mr. Thomas's whereabouts on June 16. But his notice of alibi indicates that he was only with Cecil Thomas for a portion of that day, so the testimony would not have precluded a finding that he was at Ms. Davis's house before or after the time he allegedly spent with Cecil Thomas. We, therefore, conclude that the trial court did not err in overruling Mr. Thomas's motion, and we overrule the second assignment of error.

8

### No Prejudice from Admission of Evidence Not Disclosed in Discovery

{¶20} In his third assignment of error, Mr. Thomas asserts that the trial court erred in failing to address alleged discovery violations. When responding to an allegation of a discovery violation, the "trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the discovery rules." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus.

{¶21} Mr. Thomas discovered during trial that two emails presented by the prosecutor had not been previously disclosed. When Mr. Thomas objected, the court inquired into the alleged violation, but elected to postpone the discussion about admissibility until the end of the state's presentation of evidence. Then, at the close of the state's case-in-chief, the court inquired of Mr. Thomas whether he wanted to address any issues with the emails. Mr. Thomas did not contest their admissibility. In addition, the two emails complained of were relatively innocuous and were cumulative of other evidence. The first, from May 24, explained that he would be getting a paycheck that day and asked Ms. Davis to celebrate with him. The second was sent on June 24, well after the complaints had been filed. We can find no prejudice in the trial court's decision to admit the emails into evidence, so we conclude that any error was harmless. *See* Crim.R. 52(A). We overrule Mr. Thomas's third assignment of error.

### No Cumulative Error

{¶22} In his fifth assignment of error, Mr. Thomas alleges that he was denied a fair trial and his due process rights were violated because of the cumulative effect of all of the errors in the case. But since there are not multiple instances of harmless error, the

cumulative-error doctrine does not apply. *State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, ¶ 57 (1st Dist.). Therefore, we overrule Mr. Thomas's fifth assignment of error and affirm the judgment below.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.