[Cite as *State v. Brown*, 2018-Ohio-253.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 16 MA 0161 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DARRELL BROWN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 16 CR 883

JUDGMENT:                                      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:                      Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant:                 Atty. Michael Kivlighan
3685 Stutz Drive
Suite 100
Canfield, Ohio  44406

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  January 22, 2018

ROBB, P.J.

**{¶1}** Defendant-Appellant Darrell Brown appeals from his conviction entered in Mahoning County Common Pleas Court for felonious assault, menacing by stalking, and assault.

**{¶2}** Three issues are raised in this appeal. First, Appellant argues he was denied effective assistance of counsel when the trial court denied his request for appointment of new counsel. He argues appointment of new counsel was required because there was a complete breakdown in communication with his appointed counsel. Alternatively, he requested a continuance to prepare for trial. The trial court denied this request also. Appellant contends the trial court's denial of the motion was an abuse of discretion. Second, Appellant asserts the conviction for menacing by stalking is not supported by sufficient evidence. Lastly, he argues the imposition of a consecutive sentence is contrary to law because the record does not support the trial court's findings.

**{¶3}** For the reasons expressed below, all arguments lack merit. Appellant's conviction is affirmed.

<u>Statement of the Facts and Case</u>

**{¶4}** At approximately 12:30 a.m. on July 31, 2016 an argument occurred between Jeronica Wolfe and Appellant at Jeronica's house located 3948 Sunset Boulevard in Boardman Township, Ohio. Trial Tr. 180-181. The argument was about the use of a car. Trial Tr. 181-184. Jeronica and Appellant had known each other for ten years and at some point were in a relationship. Trial Tr. 179-180. Celeste Wolfe, Jericona's adult daughter who resided with her, was upstairs getting ready to go out while the argument was occurring. Trial Tr. 208. Celeste came downstairs to tell Appellant to leave the residence. Trial Tr. 208. He allegedly attacked her while she was coming down the stairs and punched her multiple times and then ran out of the house with the keys to Celeste's car. Trial Tr. 181-182, 208. Appellant admitted to hitting Celeste four to eight times, but claims Celeste swung at him first and initiated the fight. Trial Tr. 273. The altercation resulted in Celeste sustaining injuries; she

lost consciousness, her nose was broken, and she had a facial laceration.  Trial Tr. 213, 221-222.

{¶5}  After regaining consciousness, Celeste, Jeronica, and a few other people went in two separate cars to look for Appellant to get Celeste's keys.  Trial Tr. 185, 209.  They drove to Judson Avenue and found Appellant.  Trial Tr. 185, 209.  Appellant had a gun on his person, ran in the middle of the street, and yelled he would kill them. Trial Tr. 186, 209.  Appellant admitted he had a gun in the middle of the street and used it to get them to leave.  Trial Tr. 276.  Celeste and Jeronica immediately left and returned to the residence on Sunset Boulevard.  Trial Tr. 186, 209.

{¶6}  While Jeronica and Celeste were looking for Appellant, Boardman police officers arrived at the residence on Sunset Boulevard.  Trial Tr. 244-245.  The officers had been dispatched to the house after receiving an "open ended" 911 call with screaming and fighting heard in the background.  Trial Tr. 244.  When the officers arrived at the residence the front door was ajar and no one was home.  Trial Tr. 244. Jeronica and Celeste arrived at the house after the officers determined the house was clear.  Trial Tr. 245.

{¶7}  Photographs were taken of Celeste and the stairs, and statements were taken. Celeste was then taken to the hospital in an ambulance.  Trial Tr. 187.  The emergency room doctor treated her for a closed head injury, nasal bone fracture, and facial laceration.  Trial Tr. 236.

{¶8}  At around 8:30 a.m. on July 31, Appellant returned to the Sunset Boulevard residence.   Trial Tr. 188, 226-227.   Jeronica's other adult daughter, Krystal, was sleeping on the living room floor and was awakened to the sound of Appellant saying "yo-yo-yo" at the window.  Trial Tr. 226.  Jeronica and Krystal testified they called the police.  Trial Tr. 189, 227.  Appellant used a key and tried to push his way into the house, but Krystal pushed back and tried to keep him out of the house.  Trial Tr. 189-190, 227.  An altercation ensued between Appellant and Krystal in the driveway and backyard.  Trial Tr. 190, 227.  Appellant admitted to hitting and kicking Krystal in the face during this altercation.  Trial Tr. 279.

{¶9} When the police arrived, Appellant fled on foot. Trial Tr. 252. He was apprehended in Youngstown by a Youngstown police officer. Trial Tr. 254.

{¶10} Complaints were filed against Appellant in Mahoning County Court Number 2, Boardman, for resisting arrest, burglary, assault, and obstructing official business. 8/2/16 Complaint. At the initial appearance, Appellant was held in direct contempt for statements he made to the court while walking away from the bench. 8/2/16 J.E. A preliminary hearing was held on August 9, 2016 and Appellant was bound over to the Mahoning County Common Pleas Court. 8/9/16 J.E.

{¶11} Thereafter, Appellant was indicted for felonious assault in violation of R.C. 2903.11(A)(1)(D), a second-degree felony; menacing by stalking in violation of R.C. 2903.211(A)(1), a fourth-degree felony; burglary in violation of R.C. 2911.12(A)(2)(D), a second-degree felony; and assault in violation of R.C. 2903.13(A), a first-degree misdemeanor. 9/1/16 Indictment.

{¶12} Defense counsel made requests for discovery, moved for Appellant to wear civilian clothes at trial, and filed a motion in limine. 9/14/16 and 9/23/16 Motions. A pretrial was held on September 21, 2016, the Wednesday before trial. At that pretrial, Appellant asked for new counsel. 9/27/16 J.E. The trial court denied the motion. 9/27/16 J.E. On the day of trial, Appellant through counsel renewed the motion for new counsel or, in the alternative, moved for a continuance. 10/5/16 J.E.; Trial Tr. 7-20. The trial court denied the requests. 10/5/16 J.E; Trial Tr. 7-20.

{¶13} The case proceeded to trial. The state's case consisted of testimony from the victims Jeronica, Celeste, and Krystal; two officers from the Boardman Police Department; and the Emergency Room Doctor. Appellant testified on his own behalf. The jury found Appellant guilty of felonious assault, menacing by stalking, and assault. The jury found him not guilty of burglary. 10/5/16 J.E.

{¶14} Appellant was sentenced to an aggregate term of nine and a half years. 10/7/16 J.E.; Sentencing Tr. 15. He received eight years for felonious assault, eighteen months for menacing by stalking, and six months for assault. 10/7/16 J.E.; Sentencing Tr. 15-16. The six month assault sentence was ordered to be served concurrently with the other sentences. 10/7/16 J.E.; Sentencing Tr. 16. The

felonious assault and menacing by stalking sentences were ordered to be served consecutively. 10/7/16 J.E.; Sentencing Tr.16. The trial court made consecutive sentence findings at the sentencing hearing and in the judgment entry. 10/7/16 J.E.; Sentencing Tr. 16.

{¶15} Appellant timely appealed his conviction.

<u>First Assignment of Error</u>

"Darrell Brown was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution."

{¶16} Appellant asserts he was denied his right to effective assistance of counsel because the trial court did not grant his request for substitute counsel. He contends there was a complete breakdown in communication between himself and his counsel and thus, substitute counsel was warranted. Alternatively, he argues the trial court abused its discretion when it denied his motion for a continuance. Appellant argues since the trial court denied his request for alternative counsel, it should have granted his request for a continuance so that he and his attorney could prepare for trial.

{¶17} The decision whether to remove court-appointed counsel and allow substitution of new counsel is within to the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion. *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001); *State v. Brown*, 7th Dist. No. 12 MA 198, 2014-Ohio-4420, ¶ 7. An "abuse of discretion" implies an arbitrary, unreasonable, or unconscionable attitude on the part of the court. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶18} An indigent defendant does not have a right to choose a particular attorney; rather, such a defendant "has the right to professionally competent, effective representation." *State v. Evans*, 153 Ohio App.3d 226, 2003–Ohio–3475, 792 N.E.2d 757, ¶ 30 (7th Dist.), citing *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001). "Competent representation does not include the right to develop

and share a 'meaningful attorney-client relationship' with one's attorney." *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 12 (1st Dist.).

{¶19} In order for the court to discharge a court-appointed attorney, "the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997), quoting S*tate v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus. That said, the right to counsel must be balanced against the court's authority to control its docket, as well as its awareness that a "demand for counsel may be utilized as a way to delay the proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (C.A.6 1988); *see, also, State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001).

{¶20} On the day of trial, September 26, 2016, counsel for Appellant renewed Appellant's motion for appointment of new counsel. The original motion had been made one week prior to trial at the September 21, 2016 pretrial hearing. The pretrial hearing was not transcribed for our review. However, on the day of trial the events that transpired at the September 21, 2016 pretrial were discussed in conjunction with the renewed request to appoint new counsel. Trial Tr. 8-18. The basis for the original motion and the renewed motion was a complete breakdown of communication between trial counsel and Appellant. Trial Tr. 8-9. Trial counsel indicated that since the indictment Appellant had refused to communicate with counsel. Trial Tr. 9. The trial court overruled the motion because Appellant was causing counsel to be ineffective:

> He's entitled to the effective assistance of counsel but he cannot cause the ineffectiveness by his refusal to cooperate. He can't make you ineffective and then argue that counsel is ineffective. So his refusal to converse with you is not a grounds for removing you.

Trial Tr. 13.

{¶21} Appellant argues the above demonstrates there was a complete breakdown of communication that warranted the appointment of new counsel.

Furthermore, he contends the trial court abused its discretion when it did not permit him to address the court about his complaint with his attorney.

**{¶22}** The Tenth Appellate District has stated, "when a defendant expresses concerns or complaints regarding appointed counsel, the trial court has a duty to inquire into the nature of the complaint, make such inquiry a part of the record, and make a decision on the record." *State v. Bowman*, 10th Dist. No. 06AP-149, 2006-Ohio-6146, ¶ 35. When the motion was renewed on the day of trial, the trial court did instruct Appellant not to answer or say anything unless he was called upon. Trial Tr. 8. A reading of the trial transcript reveals this instruction was given because at the September 21, 2016 pretrial, when the motion for new counsel was made Appellant did not act appropriately:

THE COURT: The pretrial was last Thursday?

MR. MASZCZAK [the prosecutor]: Wednesday.

THE COURT: Wednesday. Mr. Brown, you are not to answer or to say anything unless you're called upon. I'm talking to your lawyer. So I don't want you answering anything.

If you do, if you act inappropriately at trial – the only reason that I'm mentioning this to you, normally I don't have to do this, is because of your conduct the other day at the pretrial.

When we're in trial and I have a jury sitting here, any type of misconduct by you at any time, you blurting something out, you laughing, you shaking your head, you disagreeing, you showing anything but sitting there like a perfect gentleman is going to result in a contempt of court charge. So I want you to be aware of that. I'm not somebody to mess around with.

The rules by this court are going to be followed by everybody. So you are not permitted to respond, react, show disappointment or approval or disapproval, or whatever. You just – your place is to watch

this; let this thing go on. If you choose to participate, that would be by testifying. It's not by anything else. So I don't want to hear your voice again while I'm talking to these lawyers. Okay. Go ahead.

Trial Tr. 8-9.

**{¶23}** The trial court also noted at the sentencing hearing the inappropriate behavior at the pretrial:

During the course of the trial the court – let me say this first: To listen to you today and to listen to you at your pretrial last week is like you're two different people. You're a whole lot different today than you were last week. It kind of fascinates me. I don't really understand why. I don't really care to know why. But two completely different people.

Sentencing Tr. 12.

**{¶24}** Furthermore, the statement given before the start of trial was not the only time in this case a court had to admonish Appellant. At the initial appearance, Judge Houser found Appellant in direct contempt of court:

Defendant found in direct contempt of court for statements made to the court while walking away from the bench. The court had him returned to the bench and gave the defendant the opportunity to clarify his comments or recant them. The defendant did neither.

The defendant was found in direct contempt and sentenced to 5 days in jail to commence immediately.

8/2/16 J.E.

**{¶25}** Thus, the record in this case indicates the trial court was warranted in directing Appellant to remain quiet when the motion to appoint new counsel was renewed by counsel; Appellant's past behavior warranted such instruction.

**{¶26}** That said, the trial court did permit to Appellant to express his concerns about counsel on the record and the court inquired about those concerns on the record. This occurred at the September 21, 2016 pretrial. Although the transcript of the pretrial was not made a part of the record, the trial transcript and the judgment

entry following the September 21, 2016 pretrial indicate at the pretrial the trial court heard from Appellant, inquired about his concerns, and ruled on the motion to appoint new counsel. When the motion was renewed, the trial court indicated the same argument was made at the pretrial and overruled. Trial Tr. 12. Counsel indicated Appellant wanted him to reraise the issue because Appellant did not believe he was allowed to make motions. Trial Tr. 12-13. In response the court stated, "Well, he's wrong about that. Because the record will bear out that I did go through all of the so-called motions that he wanted to present to the court, one of which was dismissing you." Trial Tr. 12-13. The judgment entry following the September 21, 2016 pretrial also indicates all of Appellant's motions, including the one requesting new counsel, were addressed by the court:

> The Court is in receipt of a letter sent from Defendant, an inmate at the Mahoning County Justice Center. Said letter was opened by the Court this date and reviewed by the Court in open Court during this proceeding. This letter requested that counsel for Defendant, Attorney Edward Hartwig, be removed as counsel of record for Defendant and requested that a bond be set in this matter.

> The State of Ohio addressed the Court regarding the letter, as did Defendant and his counsel.

9/27/16 J.E.

**{¶27}** The judgment entry further stated Appellant addressed the court regarding issues related to the case without consulting defense counsel. The court considered those arguments and gave Appellant the choice to proceed pro se or with counsel. Appellant did not want to speak to his attorney, but did not want to proceed pro se. The court then addressed and overruled three pro se requests made by Appellant. The judgment entry indicated the case would proceed to trial on September 26, 2016. 9/27/16 J.E.

**{¶28}** Consequently, the record does indicate the trial court heard from Appellant, inquired into his concerns about counsel, and ruled on the request.

Therefore, Appellant's argument that the trial court did not let him air his concerns about trial counsel fails.

**{¶29}** Defense counsel does state on the record that since Appellant was indicted he refused to communicate with him to assist in the defense. Trial Tr. 9-10. This statement does show there was a lack of communication between Appellant and defense counsel. However, as the trial court noted, this lack of communication was caused by Appellant. In some instances, the failure to cooperate and communicate with counsel is nothing more than "stalling" and "playing games with the court." *State v. Hollingsworth*, 10th Dist. Nos. 07AP-863, 07AP-864, 07AP-865, 2008-Ohio-2424, ¶7.

**{¶30}** In addition to noting Appellant was the cause for the lack of communication with defense counsel, the trial court discussed the complexity of this case. The trial court noted this is a simple case; it's a he said/she said type of case, there is no issue of identity, and there is no scientific evidence, such as fingerprinting, forensics, or DNA. Trial Tr. 10-12. Defense counsel noted, at most, there is a potential self-defense claim. Trial Tr. 11. This is an accurate statement of the complexity of the case.

**{¶31}** Given the trial court's reasoning for both Appellant's actions and the complexity of the case, we conclude the trial court did not abuse its discretion in denying the motion to appoint new counsel.

**{¶32}** Appellant's next argument under this assignment of error is the trial court abused its discretion when it denied his request for a continuance. Appellant requested a continuance after the trial court denied the renewed motion to appoint new counsel. Trial Tr. 13-14. Appellant wanted additional time to prepare for trial since the motion to appoint new counsel was denied. The trial court overruled the continuance request. Appellant contends the trial court's denial of the continuance was based on its blanket policy to not grant any continuances after the final pretrial hearing.

**{¶33}** "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the

denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981).

{¶34} In assessing whether the trial court abused its discretion in denying appellant's request for a continuance, we consider: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether appellant contributed to the circumstance which gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. *Id.* at 67–68.

{¶35} The United States Supreme Court has stated, "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, (1964).

{¶36} In considering both *Ungar* and *Unger*, we conclude the trial court did not abuse its discretion in denying the motion to continue. Although this was the first continuance requested and there would not be too much inconvenience to the witnesses and state, the request was made moments before the trial was scheduled to start. Appellant's failure to communicate was the reason for the request; the reason for the request was dilatory and contrived. Although the trial court did indicate continuances are granted at pretrial and insinuated it was the policy of the court to not grant one after the final pretrial, the trial court's primary reason for denying this continuance motion was because it believed Appellant was "manipulating the process" of the court. Trial Tr. 14. The motion for new counsel was made at the pretrial and was denied. Appellant did not ask for a continuance at the pretrial, but instead waited until moments before trial to move for a continuance to allow him and his counsel to prepare a defense. Appellant had refused to communicate with his counsel following his indictment up until the renewed motion for new counsel. He refused to communicate with his counsel even after he was told at the pretrial hearing

that new counsel would not be appointed and trial was scheduled for the following week:

> THE COURT: But see, he's manipulating the process of this court. * * * He is one of defiance and rejection of anything and everything rather than to listening. That's what it appears to be.
>
> The court went through great lengths to explain the process to him. And nonetheless, there was nothing but rejection of anything that I had to say; and apparently whatever you had to say. But last Wednesday we discussed the fact that this case was going forward today. * * *
>
> So I don't see where more time would provide any particular advances. I explained to the defendant last week that you were appointed counsel. And I'm not going to grant him some other lawyer that he wouldn't talk to either. He just doesn't want to talk to anybody. And he hasn't hired one. So that's the end of that story I guess. What else?

Trial Tr. 14-17.

{¶37} Given the trial court's reasoning and the circumstances in this case, the trial court did not abuse its discretion in denying the motion for continuance.

{¶38} For the reasons expressed above, this assignment of error is meritless.

### Second Assignment of Error

"The conviction for menacing by stalking was based on insufficient evidence as a matter of law."

{¶39} Sufficiency of the evidence is a question of law dealing with legal adequacy of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). It is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are

evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*

{¶40} Menacing by stalking is defined as:

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

R.C. 2903.211(A)(1).

{¶41} The indictment names Celeste Wolfe as the victim of the menacing by stalking charge. Menacing by stalking requires a "pattern of conduct." Appellant states there was no evidence of a "pattern of conduct" regarding Celeste. He argues the only event was the waving of the gun in the street. The state contends the "pattern of conduct" included the punching of Celeste in the face, which resulted in the felonious assault conviction, and the waving of the gun in the street incident that happened shortly after the felonious assault. Appellant does not explain why the assault is not considered part of menacing by stalking.

{¶42} "Pattern of conduct" is defined by statute as, "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). Given this definition the felonious assault of Celeste can be considered part of the "pattern of

conduct." Therefore, if the felonious assault meets the other requirements in the statute, such as being close in time and Celeste believing Appellant would harm her, then the state provided sufficient evidence of a "pattern of conduct."

**{¶43}** We conclude the state provided sufficient evidence the felonious assault was close in time to the gun waving incident. The evidence at trial was the two incidents occurred on the same night and probably within an hour time span. Two appellate districts have stated there is "no requirement that the pattern of conduct be proved by events from two different days." *State v. Chandler*, 1st Dist. No. C–030008, 2004–Ohio–248, ¶ 10, citing *State v. Scruggs*, 136 Ohio App.3d 631, 634, 737 N.E.2d 574 (2d Dist.2000). Since "closely related in time" is not defined by the statute, the trier of fact is permitted to determine what is "closely related in time" on a-case-by-case basis. *State v. Thomas*, 1st Dist. Nos. C-130620, C-130623, C-130621, C-130624, C-130622, 2014-Ohio-2803, ¶ 9, citing *Ellet v. Falk*, 6th Dist. No. L–09–1313, 2010–Ohio–6219, ¶ 22.

**{¶44}** The state presented evidence the punching incident occurred at the house. Appellant left and then Celeste, Jeronica, and a few other people went to find Appellant because he took Celeste's car keys. They found him on Judson Avenue where he waved a gun at them and said he would kill them. This is sufficient evidence the events were close in time and not just one event. The jury could determine the separate locations and separate times established a "pattern of conduct."

**{¶45}** Menacing by stalking also requires the offender to cause the other person to believe the offender will cause physical harm to the other person or a family member. Celeste Wolfe testified that when the gun incident occurred she believed Appellant would cause her additional physical harm; she was concerned he would shoot her. Trial Tr. 210. As to the felonious assault, Celeste did not testify she believed Appellant would cause her physical harm or mental distress. However, that specific testimony was not the only means to provide evidence of belief of harm. *State v. Boden*, 7th Dist. No. 01 JE 9, 2002-Ohio-5043, ¶ 19 (indicating prior assault, offender being bigger than victim, and repeated contacts with offender could support

the conclusion offender caused the victim to be in fear of physical harm). Belief of harm can be evinced by past events, size differences between the perpetrator and victim, and other factors. *Id.*

**{¶46}** Celeste indicated there was a loud argument between her mother and Appellant; she was upstairs while they were downstairs and she could easily hear the argument. Trial Tr. 208. She went down stairs to try to "move" her mother away from Appellant. Trial Tr. 221. She knew because of her size and his size she would not be able to "remove" him from the house, so she just asked him to leave and that is when he "charged" her on the steps. Trial Tr. 220. In comparing the assaults on Celeste and Krystal, Jeronica testified because of the size differences Appellant injured Celeste, but "he couldn't do nothing to Krystal." Trial Tr. 195. Since Celeste testified at trial, the jury was able to see Celeste's size compared to Appellant's size. Both Jeronica and Celeste also testified Appellant kept hitting Celeste and then immediately left. Trial Tr. 182, 208. Celeste had to be taken to the emergency room because of the assault; she lost consciousness, suffered a broken nose, and had a facial laceration. Trial Tr. 187, 213, 236.

**{¶47}** The above evidence is sufficient to show Appellant was bigger and stronger than Celeste, there was a loud argument between her mother and Appellant, Celeste wanted to move her mother away from Appellant, and the assault happened quickly. This was sufficient evidence to establish Appellant caused Celeste to be afraid for her physical safety and for her mother's.

**{¶48}** This assignment of error is meritless; the state met its burden of production for the menacing by stalking charge.

<u>Third Assignment of Error</u>

"The trial court below committed error prejudicial to defendant by failing to properly follow the sentencing criteria set forth in O.R.C. Section 2929 resulting in Mr. Brown receiving a sentence which is contrary to law."

**{¶49}** Appellate courts review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 1. Under R.C. 2953.08(G)(2) an "appellate court may vacate or

modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.*

**{¶50}** When a trial court imposes consecutive sentences it must make the required R.C. 2929.14(C)(4) findings at the sentencing hearing, and it must incorporate those findings into the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 654, ¶ 29. We have previously explained R.C. 2929.14(C)(4) requires a sentencing court to find: "(1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public, and (3) one of the findings described in subsections (a), (b) or (c)." *State v. Jackson*, 7th Dist. No. 15 MA 93, 2016–Ohio–1063, ¶ 13. Subsections (a), (b), and (c) provide:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)–(c).

**{¶51}** Appellant does not dispute the trial court made the first two required findings. His argument instead focuses on the third required finding – a finding of

either (a), (b), or (c). Appellant asserts the trial court made no division (a) finding and the record does not support the trial court's division (b) finding. As such, he contends the sentence is contrary to law.

{¶52} Appellant is correct the trial court did not make a division (a) finding. However, the trial court did make a division (b) and (c) finding. At the sentencing hearing, it stated, "The court further finds that the harm in this case was so great or unusual that a single term does not adequately reflect the seriousness of the offender's conduct, and that his criminal history shows that consecutive terms are needed to protect the public." Sentencing Tr. 16. In the judgment entry it stated:

> The Court further finds that pursuant to O.R.C. 2929.14(C)(4)(b) at least two of the multiple offense were committed as part of one or more courses of conduct, and the harm caused by the two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; and finds pursuant to O.R.C. 2929.14(C)(4)(c) that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

10/7/16 J.E.

{¶53} The trial court was only required to make one finding, either (b) or (c). Appellant does not argue the (c) finding was not supported by the record. As such, his argument fails because even if we could conclude the (b) finding was not supported by the record, the (c) finding was made and it was supported by the record.

{¶54} That said, it is noted that both findings are easily supported by the record. The trial court discussed Appellant's criminal record at the sentencing hearing. Sentencing Tr. 7. He has a 1999 juvenile adjudication for aggravated robbery, a 2000 attempted drug abuse conviction, a 2003 carrying a concealed weapon conviction, a 2006 misdemeanor obstructing conviction, a 2007

misdemeanor assault conviction, a 2008 felony for unauthorized use of a motor vehicle conviction, a 2013 weapons under disability conviction, and a 2016 fleeing and alluding conviction. The court also indicated Appellant is a convicted felon and was not permitted to have a firearm on his person. However, in committing the crime of menacing by stalking he used a gun; Appellant admitted he had a gun and waved it in the street. Sentencing Tr. 14-15. The court further noted Appellant has previously served time in the penitentiary but continues to commit crimes. Sentencing Tr. 15. Thus, the division (c) finding is supported by the record and was not contrary to law.

**{¶55}** The division (b) finding is also supported by the record. The undisputed facts of this case are Appellant punched Celeste multiple times breaking her nose, lacerating her face, and causing her to lose consciousness. Appellant left the house and when Celeste and Jeronica found him a little while later, Appellant waved a gun at them in the middle of Judson Avenue and told them he would kill them. These facts support a division (b) finding; the finding was not contrary to law.

**{¶56}** For those reasons, this assignment of error is meritless.

<u>Conclusion</u>

**{¶57}** All three assignments of error lack merit. The conviction is affirmed.


Waite, J., concurs.

DeGenaro, J., concurs.